**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ROSE M. V., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | **REPORT AND RECOMMENDATION** <br><br> 2:17-cv-01142-RJS-EJF <br><br> District Judge Robert J. Shelby <br><br> Magistrate Judge Evelyn J. Furse |

Plaintiff Rose M. V. ("Ms. V.")[1] filed this action asking the Court[2] to remand the Acting Commissioner of Social Security's ("Commissioner") decision denying her claim for Disability Insurance Benefits ("DIB") payments under Title II of the Social Security Act ("Act"). (Pl.'s Opening Br. ("Pl.'s Br.") 6, ECF No. 17.)  Ms. V. specifically requests this Court remand her case "so that the ALJ can apply the appropriate standard in evaluating [Ms. V.'s] symptoms," the weight accorded her treating physician, and her ability to perform sustained work. (Id. at 8, 10–11, 15.)  Having carefully considered the parties' memoranda and the complete record in the matter,[3] the undersigned RECOMMENDS the District Judge REMAND the Commissioner's decision for

---

[1] Pursuant to newly adopted best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the undersigned will refer to the Plaintiff by her first name and last initial only in this Report and Recommendation.

[2] On January 5, 2018, the District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 14.)

[3] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the undersigned concludes it does not need oral argument and will determine the appeal on the basis of the written memoranda.

1

improperly evaluating the treating physician's opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Born in March 1963 (certified copy of the transcript of the entire record of the administrative proceedings relating to Rose M. V. ("Tr.__"), Tr. 130, 212, ECF No. 13), Ms. V. alleges disability based on cervical osteoarthritis, cervical degenerative disc disease, cervical spinal stenosis, cervical bone spurs, neck muscle spasms, thoracic outlet syndrome right side, neck pain, stiffness, and limited range of motion, varicose veins and heaviness in both legs, cervical radiculopathy and slight numbness in the right hand, and cervical nerve damage. (Tr. 130–31, 260.) Ms. V. completed eleventh grade (Tr. 261) and previously worked as a court clerk, hotel front desk clerk, a baker, and a licensing agent for an insurance company. (Tr. 262.) Most recently, from early 2013 until the end of May 2015, Ms. V. worked twenty hours a week as a court clerk. (Tr. 40–41, 262.)

Ms. V. applied for disability benefits on April 24, 2014, alleging a disability onset date of January 18, 2013. (Tr. 212.) The Social Security Administration denied Ms. V.'s disability claim on August 14, 2014 (Tr. 154–57) and upon reconsideration on December 3, 2014. (Tr. 159–161.) On December 31, 2014, Ms. V. requested a hearing before an ALJ. (Tr. 162–63.) The ALJ conducted an administrative hearing on September 20, 2016. (Tr. 35–64.) On November 22, 2016, the ALJ found Ms. V. not disabled. (Tr. 12–34.) The ALJ determined Ms. V. could perform past relevant work as an office clerk as generally, and actually, performed in the national economy making her not disabled. (Tr. 29.) On December 6, 2016, Ms. V. appealed the ALJ's decision to the Social Security Administration's Appeals Council. (Tr. 205.) On September 15,

2017, the Appeals Council denied Ms. V.'s request to review the ALJ's decision (Tr. 1-5), thereby rendering the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. See 20 C.F.R. § 404.981 (explaining the effect of an Appeals Council denial).

## II. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. § 405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).[4] The standard "requires more than a scintilla, but less than a preponderance." Lax, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988) (quoting Fulton v. Heckler, 760 F.2d 1052, 1055 (10th Cir. 1985)). Moreover, "[a] finding of 'no substantial

---

[4] Courts apply the same analysis in determining disability under Title II and Title XVI. See House v. Astrue, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

3

evidence' will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," Lax, 489 F.3d at 1084 (quoting Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005)), but will "review only the sufficiency of the evidence," Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The court does not have to accept the Commissioner's findings mechanically but will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the sustainability of the evidence test has been met." Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800–01 (10th Cir. 1991)). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" Lax, 489 F.3d at 1084 (quoting Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. See Glass v. Shalala, 43 F.3d

1392, 1395 (10th Cir. 1994); Thomson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993); Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993).

### III. APPLICABLE LAW AND SEQUENTIAL EVALUATION PROCESS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation. See 20 C.F.R. § 404.1520; Williams v. Bowen, 844 F.2d 748, 750–53 (10th Cir. 1988); Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The analysis evaluates whether:

(1) The claimant presently engages in substantial gainful activity;
(2) The claimant has a medically severe physical or mental impairment or impairments;
(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
(4) The impairment prevents the claimant from performing his or her past work; and
(5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

See 20 C.F.R. § 404.1520. The claimant has the initial burden of establishing the disability in the first four steps. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). At

5

step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy. Id.

## IV. ANALYSIS

The ALJ found Ms. V. had the following severe impairment: cervical degenerative disc disease/spondylosis (with radiculopathy). (Tr. 17.) The ALJ also considered Ms. V's obesity as a secondary factor under SSR 02-1p. (Tr. 17.) The ALJ determined that Ms. V. retained the residual functional capacity ("RFC") to perform light work. (Tr. 19.) The ALJ denied Ms. V.'s application for benefits concluding at step four of the five-step analysis that Ms. V. did not have a disability because she could still perform her past relevant work as an office clerk as generally and actually performed. (Tr. 29.) Accordingly, the ALJ found Ms. V. not disabled. (Tr. 29.) See 20 C.F.R. § 404.1520(a)(4)(iv) (explaining that a claimant who can perform her past work will not qualify as disabled).

In challenging the ALJ's decision, Ms. V. asserts that the ALJ erred when he failed to evaluate her symptomology under SSR 16-3p. (Pl.'s Br. 6–8, ECF No. 17.) Ms. V. specifically argues that, although the ALJ appears to have reviewed the entire record, his decision shows he inordinately focused on the objective medical evidence when evaluating her symptomology. (Id. at 7–8.) Ms. V. also contends that the ALJ erred when he failed to evaluate properly the opinion evidence from her treating physician Dr. Jason Hansen. (Id. at 8–14.) Lastly, Ms. V. argues substantial evidence does not support the ALJ's finding that she can meet the demands of full-time work. (Id. at 15–16.)

6

### 1. Pain and Limitations Analysis

Ms. V. argues the ALJ erred when he evaluated her symptoms because "[w]hile it appears that the ALJ evaluated the entire record on the surface, the ALJ makes at least three findings that indicate that he was focused primarily on objective evidence in evaluating [her] symptoms." (Pl.'s Br. 7, ECF No. 17.)  Ms. V. further asserts the three findings taken together demonstrate that the ALJ "inappropriately focused on objective medical evidence in establishing the severity of Ms. V[.]'s symptoms." (Id. at 8.)

The Commissioner counters that, in addition to objective medical evidence, the ALJ considered many factors including Ms. V.'s conservative medical treatment, her positive response to medication, her daily activities, and her ability "to work throughout the relevant time period." (Def.'s Answer Brief ("Opp'n") 6–10, ECF No. 19.)

In her Reply, Ms. V. contends the Commissioner's conservative treatment argument mischaracterizes her efforts to obtain relief because her doctors told her surgery would not help her symptoms and receiving additional injections would prove futile as long as she continued the repetitive behavior. (Pl.'s Reply Brief ("Reply") 2, ECF No. 20.)  Ms. V. further asserts that the Commissioner mischaracterizes her daily activities because her ability to perform daily activities does "not demonstrate that she is active in such a way that she could sustain full time competitive employment." (Id. at 6.)

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).  When evaluating the claimant's statements about her symptoms, the ALJ "determine[s] whether the individual has a medically determinable impairment … that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p,

7

Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, (Oct. 25, 2017) at *3.[5] If the claimant establishes "the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms," the ALJ next evaluates "the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which the individual's symptoms limit his or her ability to perform work-related activities." Id. at *4.

When assessing the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, an ALJ must consider several factors in addition to the evidence from medical and nonmedical sources, including:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

---

[5] SSR 16-3p applies to claims decided on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *1. On November 22, 2016, the ALJ issued his decision finding Ms. V. not disabled (Tr. 12–34), and the Appeals Council denied Ms. V.'s request to review the ALJ's decision on September 15, 2017 (Tr. 1–5). Accordingly, the undersigned evaluates Ms. V.'s claims pursuant to SSR 16-3p. This Report and Recommendation cites to the revised SSR 16-3p published on October 25, 2017. The SSA first published SSR 16-3p on March 16, 2016 (see SSR 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016), and then republished the Ruling on October 25, 2017. The revision does not change the content of the Ruling but instead changes the term "effective date" to "applicable date" and updates citations "to reflect the revised regulations that became effective on March 27, 2017." SSR 16-3p, 2017 WL 5180304, at *1.

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7–8.

Generally, "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." Id. at *9.  Alternatively, a claimant's statements about the intensity and persistence of her symptoms may contradict the evidence in the record "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms." Id.

In this case, the ALJ found Ms. V.'s "medically determinable impairments may not reasonably be expected to produce the alleged symptoms." (Tr. 19.) The ALJ subsequently determined that Ms. V.'s "allegations concerning the intensity, persistence, and limiting effects of these symptoms are not reasonably consistent with the objective evidence and other evidence, in consideration of the record in its entirety." (Tr. 19.) As Ms. V. points out, if the ALJ really intended to make this finding his analysis should have stopped. (Pl.'s Br. 7, ECF No. 17; see also SSR 16-3p, 2017 WL 5180304, at *4; 20 C.F.R. § 404.1520(c).) However, substantial evidence does not support this finding, given the uncontradicted evidence in the record that Ms. V. suffers from cervical

9

degenerative disc disease/spondylosis with radiculopathy. Nonetheless, the ALJ continued his analysis, making this finding either a typographical error or harmless.

The ALJ did in fact determine that Ms. V. had an underlying medically determinable impairment that could reasonably produce her symptoms but ultimately concluded the evidence in the record did not support her statements regarding the intensity and limiting effects of her symptoms. (See Tr. 29.) The ALJ found the evidence in the record did not fully support Ms. V.'s complaints about her level of pain because "her treatment history is not commensurate with her complaints of disabling symptoms. Her complaints are highly contraindicated, as well, by progress notes reflecting low to mild pain levels, an excellent benefit from medications, and greatly unremarkable clinical findings." (Tr. 28.) With respect to the medical evidence, the ALJ found the medical records showed "intact muscle strength and sensory functions without focal deficit throughout the record, in spite of some intermittent tenderness and spasm." (Tr. 28.) He further found "[t]here is no evidence of focal paralysis, muscle atrophy, sustained muscle loss, or any other clinical finding that would lead [him] to conclude that she cannot sit and stand/walk for six of eight hours, cumulatively, in an eight-hour workday." (Tr. 28.) The ALJ further concluded that Ms. V.'s refusal of injections, which she reported relieved her pain, and her lack of surgical treatment rendered her statements of disabling pain and limitation unpersuasive. (Tr. 27.) In her Reply, Ms. V. contends the ALJ "mischaracterizes a surgical evaluation [from Dr. Druckemiller] to imply that [she] both did not want surgery and that she was not a surgical candidate." (Reply 6, ECF No. 20.) Substantial evidence supports the ALJ's determination with respect to Ms. V.'s treatment of her pain.

In August 2008, Dr. Druckemiller opined that "[a] significant number of [Ms. V.'s] symptoms are soft tissue related. She has typical flexion tendinitis at the C7 spinous process. The arm symptoms are not consistent with a radiculopathy. There are no hard findings of a radiculopathy or mylopathy." (Tr. 354.) He ultimately recommended that Ms. V. "continue her present course including work place adjustments as necessary," because, "[i]n [his] opinion, surgery is not indicated, especially given the three level changes. If she has a one or two level fusion at 5-6 or 6-7 she will definitely aggravate 4-5 in the long run because there is already significant foraminal stenosis at that level." (Tr. 354.) While Dr. Druckemiller did recommend Ms. V. not undergo surgery, years after seeing Dr. Druckemiller, Ms. V. continued to express her reluctance to undergo surgery unless she really needed it. (See Tr. 57, 434, 437, 465–66.) Accordingly, the undersigned finds the ALJ did not mischaracterize the record. The undersigned does note, that this opinion comes approximately five years prior to the alleged date of disability onset, and in 2014 the same scenario repeated itself, albeit with more severe physical cervical impairments. (Tr. 434, 437, 465.)

Ms. V. also takes issue with the ALJ's and the Commissioner's focus on her lack of additional injections. (Reply 2, ECF No. 20.) Ms. V. contends she did not receive additional injections for her neck because injections would prove futile as long as she continued to engage in repetitive activity. (Id.) She, however, does not point to any evidence in the record, and the undersigned does not find any, where a physician opined that continued injections would prove futile. Ms. V. received an injection in November 2009 (Tr. 361) and received approximately six weeks of relief before she strained herself while moving Christmas boxes. (Tr. 77.) A progress note from January

11

2010 states that she held off receiving another injection for an unstated reason.  (Id.)  In May 2014, physician Jeffrey Wright discussed injections as a treatment option with Ms. V.  (Tr. 425.)  Mr. V. stated she did not wish to pursue injections at the time and preferred to consult with a surgeon before receiving any other treatments.  (Tr. 425.)  Thus, Ms. V. never tried injections after the alleged date of disability onset, and no medical opinion nor Ms. V.'s own experience suggests they would have proven ineffective.  The ALJ should and did consider Ms. V.'s attempts at pain relief.

Ms. V. contends her daily activities and ability to work part-time do not contradict what she said she could do.  (Reply 3, ECF No. 20.)  The ALJ considered Ms. V.'s daily activities and noted

> she walks with her husband for 30 minutes in the morning and also takes 45-minute walks later in the day, which involves walking an 'incline,' as opposed to level ground.  ... She uses her home IPAD 3 times per day for 1-hour sessions, to send text messages, email others, use Facebook, and look at Internet sites.

(Tr. 19.)  The record shows the ALJ made note of Ms. V.'s stated accommodations including lying down after chores, elevating her legs every two hours, and limiting IPad usage to an hour at a time.  (Tr. 19.)  Additionally, the ALJ noted Ms. V. managed to work part-time during the relevant period of alleged disability.  (Tr. 19.)  The Regulations direct an ALJ to consider a claimant's daily activities.  SSR 16-3p, 2017 WL 5180304, at *7–8.  While Ms. V. contends her activities of daily living show she cannot work, the ALJ found they show she can.  Where two people can reach different conclusions from the evidence, one of them the ALJ's conclusion, substantial evidence exists to support the ALJ's decision.  Lax, 489 F.3d at 1084.  Thus, the ALJ appropriately considered daily activities in making his determination.

However, the ALJ's discounting of Ms. V.'s limits in her activities of daily living raises concern. The ALJ discounts the limitations on Ms. V.'s activities of daily living because he cannot objectively verify them (Tr. 28) despite Ms. V.'s testimony and her husband's, her daughter's, and her former employer's submissions (Tr. 20). This reason to discount the reports of limitation proves too much. Under this rationale, the ALJ should never consider activities of daily living because an ALJ could never objectively verify them. Obviously, the SSA has decided otherwise. SSR 16-3p, 2017 WL 5180304, at *7–8. The second basis the ALJ relies on, that something else could cause the limits (Tr. 28), suffers from the same logical fallacy. A different, unidentified cause could require the accommodation reported in every single case—that is the nature of an unidentified cause.

As set forth below, the undersigned recommends the District Judge remand because of the ALJ's improper evaluation of Dr. Hansen's opinion. At such time the ALJ should reconsider his findings in light of the evidence on remand and this Report and Recommendation.

### 2. Treating Source Opinion

Ms. V. argues the ALJ failed to evaluate properly the opinion evidence from her treating physician, Dr. Jason Hansen. (Pl.'s Br. 8–14, ECF No. 17.) Ms. V. contends the ALJ determined the RFC and then compared Dr. Hansen's opinions to it to test for consistency—a process not provided for in social security law. (Id. at 10–11.) Ms. V. also asserts substantial evidence does not support the ALJ's decision assigning Dr. Hansen's opinions little weight because, contrary to the ALJ's finding, Ms. V. did not

13

have multiple gaps in treatment with Dr. Hansen. (Id. at 11–12.) Ms. V. further contends the ALJ erred in his consideration of her nonsurgical treatment, which the ALJ used in part to discount Dr. Hansen's opinions. (Id. at 13–14.)

The Commissioner fails to address Ms. V.'s first argument and counters her second argument with citation to the record regarding treatment gaps. (Opp'n 10–13, ECF No. 19.) The Commissioner insists that substantial evidence supports the ALJ's evaluation of Dr. Hansen's opinion because Dr. Hansen's progress notes lacked consistency with his medical opinions and the opinions from Drs. Rubinowitz and Heaton and also lacked consistency with Ms. V.'s activities of daily living and her conservative medical treatment. (Id. at 12–13.) As addressed below, the undersigned finds that the ALJ erred in his evaluation and consideration of Dr. Hansen's medical opinions.

Dr. Hansen treated Ms. V. for her arm, neck, and leg pain from May 2014 until August 2016. (Tr. 467–68, 465–66, 518–19, 514–15, 504–05, 501–02, 499–500, 497–98.) In July 2014, Dr. Hansen opined that Ms. V. suffered from cervical spondylosis and cervical radiculopathy, and also experienced chronic neck pain and radicular pain in her right arm. (Tr. 439.) He opined that Ms. V. likely could not work in a "competitive environment full-time for 40 hours." (Tr. 439.) He, however, opined that she could work part-time with frequent breaks and no heavy lifting. (Tr. 439.) He further stated that although Ms. V. went to "physical therapy and has taken anti-inflammatories and has had one epidural injection," Ms. V.'s "symptoms might slowly worsen over the years." (Tr. 439.)

In August 2016, Dr. Hansen stated that Ms. V. had "tingling in [her] hands from nerve compression," and could "only type for 45 minutes due to tingling in [her] hands." (Tr. 493.) Dr. Hansen opined that Ms. V. could only lift less than ten pounds, stand or walk for two hours, and sit for less than two hours in an eight-hour work day. (Tr. 493.) He further stated Ms. V. would be off-task at least twenty percent of the time in an eight-hour work day, with a sixty percent level of efficiency. (Tr. 494.) Lastly, he opined Ms. V. "would have a hard time doing any repetitive task or posture for more than 45 minutes to an hour. [She] could work part time, light duty." (Tr. 494.)

Despite Dr. Hansen's opinion, the ALJ concluded Ms. V. could perform "light work" including sitting, standing, and/or walking for six hours cumulatively in an eight-hour workday. (Tr. 19.) The ALJ made no requirement that Ms. V. have the option to alternate between sitting and standing nor did he limit Ms. V.'s performance of repetitive work with her hands in any way. The ALJ's decision largely adopted the opinions from non-examining medical experts Drs. Kim Heaton and Martin Rubinowitz. (See Tr. 26–27.)

Here, the ALJ assigned Dr. Hansen's opinion "little weight" because he concluded

> a reduction to a 'light' level of exertion as described in my residual functional capacity is fully warranted in the instant matter, for the numerous reasons set forth below in my medical analysis, as well as the obvious inconsistencies between his greatly unremarkable progress notes and his inflated medical opinions.

(Tr. 26.) The undersigned finds the ALJ's analysis of Dr. Hansen's opinions substantially flawed.

15

An ALJ must evaluate every medical opinion. 20 C.F.R. § 404.1527(c). If the ALJ finds a treating physician's opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record," the ALJ must give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2); see Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). In this case, the ALJ did not conduct the required sequential evaluation of Dr. Hansen's opinions. The ALJ did not specifically address whether he found Dr. Hansen's opinions well-supported by medically acceptable clinical and laboratory diagnostic techniques, and his decision makes no reference to any diagnostic techniques used by Dr. Hansen. (See Tr. 26.) The opinion regarding Dr. Hansen also fails to reference the evidence other than Dr. Hansen's records. Thus, the ALJ erred in deciding whether to accord Dr. Hansen controlling weight. That error could prove harmless if the rest of the decision makes the basis for that conclusion clear. Harmless error occurs "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Fischer-Ross v. Barnhart, 431 F.3d 729, 733–34 (10th Cir. 2005).

When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider the following factors in deciding the weight to give the treating physician's opinion, as well as other medical opinions:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which

16

> an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1300–01 (citation omitted); see also 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must "'give good reasons' in the notice of determination or opinion for the weight that is given the treating physician's opinion." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2), now (c)(2)). If the ALJ rejects a medical opinion, he must offer "'specific, legitimate reasons'" for doing so. Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (quoting Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996)). When considering medical opinion evidence, the ALJ must weigh and resolve evidentiary conflicts and inconsistencies. See Richardson v. Perales, 402 U.S. 389, 399 (1971) (reflecting the ALJ's duty to resolve conflicting medical evidence).

Despite skipping over whether Dr. Hansen's opinions warrant receiving controlling weight, the ALJ should still have given Dr. Hansen's opinion deference and considered the six Watkins factors in determining the weight to assign Dr. Hansen's opinions. See Watkins, 350 F.3d at 1300–01. The ALJ's decision fails to make clear whether he considered the Watkins factors.

The ALJ's first reason for ascribing the opinions little weight—because his finding that Ms. V. can perform "light work" supports the ALJ's "medical analysis"—lacks sufficiency. An ALJ may not reject a medical opinion because of his "own credibility judgments, speculation or lay opinion." Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004) (quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis omitted)). "An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors." Hamlin, 365 F.3d at 1221 (citing Miller v.

Chater, 99 F.3d 972, 977 (10th Cir.1996)). The ALJ in this case appears to have done just that.

Furthermore, the ALJ cannot outline his preferred RFC and then reject nonconforming medical opinions. Rather, the ALJ formulates the RFC after considering "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The RFC comes into play at the fourth and fifth steps of the sequential evaluation to determine ability to work. 20 C.F.R. § 404.1520(e). Nothing in the statute, regulations, or case law suggests the ALJ should use the RFC to determine what weight to give medical opinion evidence and doing so makes no sense. Therefore, the ALJ's first reason for discrediting Dr. Hansen further demonstrates he failed to follow the medical opinion evaluation process provided by law, thus committing error. The undersigned proceeds to consider his other reasons for discounting Dr. Hansen's opinion to determine whether this error may prove harmless.

The ALJ's second reason for ascribing Dr. Hansen's opinions little weight lacks sufficiency because he fails to state the "obvious inconsistencies" in Dr. Hansen's opinions. The ALJ's decision need not "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." Oldham, 509 F.3d at 1258; see also Vallejo v. Berryhill, 849 F.3d 951, 955 n.2 (stating a decision must contain reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." (quoting Watkins, 350 F.3d at 1300)). While the Commissioner argues substantial evidence supports the ALJ's decision and expressly points to such alleged evidence (see Opp'n 10–13, ECF No. 19), the ALJ does not tie his discussion to the

evidence the Commissioner presents. The court may not supply possible reasons for assigning the weight the ALJ did and may only evaluate the ALJ's decision on the stated reasons. Robinson v. Barnhart, 366 F.3d 1078, 1084–85 (10th Cir. 2004). The Commissioner points to inconsistencies with Drs. Heaton and Rubinowitz's opinions (Tr. 12), but inconsistency with other medical opinions is not one of the bases the ALJ cites for discounting Dr. Hansen's opinion. (Tr. 26.) Similarly, the Commissioner contrasts Dr. Hansen's opinion with Ms. V.'s activities of daily living, but the ALJ does not assert that inconsistency as a basis to discount Dr. Hansen's opinion either. (Id.) Without the ALJ pointing to such evidence to support his reasoning for ascribing the opinions little weight, the undersigned may not fill in the gaps for the ALJ's decision. Robinson, 366 F.3d at 1084–85 (noting that a court may not supply possible reasons for assigning the weight the ALJ did and may only evaluate the ALJ's decision on the stated reasons). Therefore, the undersigned concludes the ALJ did not sufficiently explain his findings to allow the undersigned to determine whether he applied the correct legal standards to Dr. Hansen's opinions to enable judicial review. Accordingly, the undersigned RECOMMENDS the District Judge REMAND this case so the ALJ can properly evaluate and weigh Dr. Hansen's opinions.

Because the undersigned recommends remand on the treating physician issue, the undersigned does not reach Ms. V.'s remaining argument regarding her inability to perform sustained work activities (Pl.'s Br. 15–16, ECF No. 17) because the ALJ's treatment of Dr. Hansen's opinions may affect the ultimate RFC formulation.

19

**RECOMMENDATION**

For the reasons discussed above, the undersigned RECOMMENDS the District Judge REMAND the Commissioner's decision.

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof. Id. Failure to object may constitute waiver of objections upon subsequent review.

DATED this 1st day of February, 2019.

BY THE COURT:

Evelyn J. Furse
United States Magistrate Judge